## LINCOLN v PEOPLES RAILWAY CO

Ohio Appeals, 2nd Dist, Montgomery Co

No 1563. Decided June 5, 1939

McMahon, Corwin, Landis & Markham, Dayton, for Appellant.

Jacobson & Durst, Dayton, for Appellee.

## OPINION

By GEIGER, J.

This cause arose in the Court of Common Pleas of Montgomery County wherein Edith B. Lincoln, Administratrix, plaintiff, appellee, brought her action against the Peoples Railway Company, defendant, appellant.

The amended petition recites the appointment of the administratrix and that a suit is brought in a representative capacity; that the defendant operates its street railway cars at the point in question northwardly and southwardly on a single track located near the east curb line of North Main Street so that the street cars proceeding southwardly on Main Street do so on the left side of said street and directly in the path of north bound traffic; that on the 10th day of December, 1933, at 7 o'clock P. M., the plaintiff's decedent, James W. Lincoln was operating his automobile northwardly and that the defendant was operating its car southwardly on said North Main Street and at the location of the defendant's single track.

It is asserted that the decedent was operating his automobile on the right hand side of the street but that the defendant operated its car at a dangerous rate of speed without having same under control, and without due regard

for the width, traffic and usual and general rules of said street and directly in the path of the vehicular traffic moving northward, and that the operator caused the car to run into the automobile operated by the decedent.

It is further alleged that after the automobile driven by the decedent had been brought to a stop and when the defendant's operator saw the automobile, he by the exercise of ordinary care could have brought the street car to a stop avoiding the collision, yet he failed to exercise such care and continued to operate the car at á high rate of speed causing it to run into the car of the decedent resulting in injuries to him from which he died. Judgment is asked in the sum of $20,000.

The defendant-appellant answered admitting certain allegations and denying all others.

For its second defense it is asserted by the appellant that even if it was guilty of any negligence, which it denies, that the said decedent was guilty of gross negligence which directly and proximately contributed to the accident and to his death in the following respects:

(1) That he drove his automobile northwardly without looking or listening or exercising his faculties to observe the approach of the defendant's car then proceeding southwardly and into the street car when he knew or should have known that the street car was approaching, but had just about stopped in its effort to avoid the head-on collision.

(2) That the decedent drove the said automobile toward and into the front end of the defendant's street car at a high, dangerous and excessive rate of speed.

(3) That the decedent drove his automobile into the front end of defendant's car without having the same under proper control and without turning it away from the track or bringing the same to a stop, either of which would have prevented the accident.

(4) That he drove his automobile into the street car in violation of Section 4 of the Ordinance of the City of Dayton which provides, in substance, that it shall be unlawful to drive vehicles in such a manner as to unnecessarily interfere with the free passage of street cars over their tracks or to interfere unnecessarily with the immediate passage of a street car upon signal by gong.

(5) That the decedent drove his automobile in violation of Section 23 of Ordinance 12883 of the City of Dayton to the effect that street cars shall have the right of way between cross streets over all other vehicles, with certain exceptions.

The case was submitted to a jury which returned a special verdict for the plaintiff for $5000, the special verdict being to the effect that the jury found the following facts, the pertinent ones on which issue was made being here recited: That the defendant operated its cars northwardly and southwardly on a single track located east of the center line of the traveled portion of said North Main Street so that the defendant's cars proceeded southwardly on the east side of said street against traffic moving northward, thereby creating a dangerous condition; that at the time in question the decedent was operating his automobile northwardly in said single track and that the defendant was operating its car southwardly on said single track; that at the time and place the atmosphere was dark, drizzly and misty and the rails slippery; that the company was operating its car at an unreasonable rate of speed under the weather conditions and in view of the movement southward on the east side of the street; that it did not have its street car under control considering the conditions, all of which was the proximate cause of the collision which caused the decedent's death. A recitation is then made of his next of kin and the special verdict concludes:

"Should the Court, upon this special verdict, determine that the plaintiff is entitled to damages, then we assess the amount thereof in the sum of $5,000."

Plaintiff filed a motion for judgment on the special verdict and the defendant a motion for new trial and for judgment, which latter motion was overruled and judgment was rendered against the defendant in accordance with the special verdict.

Notice of appeal was filed and the case is in this court for determination.

Assignment of errors filed by defendant asserts seven errors committed by the court below which may be summarized as not sustaining the motion for directed verdict and overruling the same; in receiving the special verdict and rendering judgment thereon for the reason that the special verdict is not a finding upon all the issues in the case; that the special verdict is not a finding of facts but contains conclusions only and that there is no finding from which the court could infer negligence on the part of the defendant; error of the court in refusing to give defendant's charges 6 and 7; error of the court in refusing to instruct the jury to disregard that part of plaintiff's petition which pleads the "last clear chance"; that the verdict is against the weight of the evidence.

Counsel for defendant urge that its motion for directed verdict at the close of plaintiff's case should have been sustained because no negligence was shown on the part of the defendant and because the evidence at that time raised the presumption of negligence on the part of the plaintiff, which plaintiff failed to counterbalance. Counsel point out that there were five witnesses for the plaintiff, only one of whom testified to facts as to the collision. It is claimed that this witness was following the street car about one-half block in the rear and did not see the automobile before the collision. All he knew was that the street car came to an abrupt stop and that the front end of the automobile was badly damaged. It is asserted that this is all the evidence produced by the plaintiff on the question of how the accident occurred and it is also asserted that there was no evidence establishing the issue of "last clear chance". Defendants

point out that they produced three witnesses whose testimony was set out in the brief, one being a boy on the street, one a passenger and the other the operator of the street car. The testimony will be noted later.

Counsel for defendant, appellant, point out that the evidence indicated that there was ample room for an automobile to pass between the street car and the east curb; that the car was well lighted; that the gong was being sounded and Lincoln knew the operation of the cars; that nearby there was a gasoline station also well lighted; that the street showed no marks of the application of the brakes on the automobile; that the ordinance of the city permitted the use of a single track in the position where it was located.

It is claimed that the record clearly shows that Lincoln, the decedent was guilty of such conduct as to require a directed verdict.

In support of the assignment of errors that the court erred in receiving the special verdict which was not a finding upon all of the issues of the case, which were negligence, contributory negligence and proximate cause, it being asserted that the verdict did not cover the element of contributory negligence, counsel point out that under §11420-16 GC, that the Court, on request, shall direct the jury to give a special verdict "upon any or all issues which the case presents". Counsel urges that by reason of the fact the special verdict made no mention of the negligence or lack thereof of the plaintiff, that it was defective, citing the case of **Martz v Floral Products Co., 17 Abs 118**, decision by Hornbeck, J., to the effect that the jury must determine the question of negligence, contributory negligence and proximate cause when they are at issue in the case.

"To support a judgment for the plaintiff of contributory negligence as an issue in the case, it must appear from the special finding of facts that the defendant was negligent which negligence was a proximate cause and

it must further appear that plaintiff was not negligent or, if negligent, that her negligence was not the proximate cause of her injuries."

Appellant notes the case of **Noseda v Delmul, 123 Oh St 647,** wherein it is held:

"A special verdict is not invalid because there is not a finding of ultimate facts on all the issues. When certain of the issues are not determined that are to be regarded as not proved by the party which had the burden of proof upon the issue."

The appellant asserts that the last cited case does not involve the question of contributory negligence but was confined to the fact that there was no finding on the question of damages. Counsel assert that the question of contributory negligence was the most important element in the case and that the special finding failed to include anything in reference to the plaintiff's conduct and therefor is insufficient and that a new trial should be granted for that reason.

The part of the finding embodied in the special verdict is,

"Should the Court, upon this special verdict, determine that the plaintiff is entitled to damages, then we assess the amount thereof in the sum of $5,000."

The defendant submitted a special finding of its own upon which the jury did not return a verdict. We do not find that the special verdict was invalid by reason of the omission complained of.

Complaint is made that the court was in error in refusing to take from the consideration of the jury that part of the amended petition having to do with "last clear chance" claiming that there was no evidence to substantiate this allegation. This matter will be considered later as we examine more in detail the bill of exceptions.

The remainder of the errors assigned relate to the weight of the evidence and we will further consider the same.

The brief for the appellee raises a number of legal questions. One point that we comment on is the appellee's insistence that the plaintiff is presumed to have exercised ordinary case for his own safety and since the accident happened under conditions which prevented any eye witnesses, that the jury should weigh that presumption in reaching the decision.

Whatever presumption there is as to the exercise of ordinary care on the part of the plaintiff is equally applicable to a presumption of ordinary care upon the part of the defendant in the operation of its car. The presumption in either event can be met by the evidence in the case. The presumption in favor of or against either of the parties is so susceptible of being balanced by other evidence that we postpone our final conclusion until we shall examine more in detail the record. **Norris v Jones, 110 Oh St 598-604.** Negligence not presumed—**Traction Co. v Brandon, 87 Oh St 187-195.**

Counsel for appellees further point to the fact that as the special verdict made no finding on the allegation of the "last clear chance" that the defendant would not be prejudiced by failure to withdraw it from the consideration of the jury. We have already held that it was not error to refuse to withdraw this issue.

We have had called to our attention and we have examined the cases of **Cleveland R. R. Co. v Durelin, 30 Oh Ap 389; Norris v Jones, 110 Oh St 598; Cincinnati Traction Co. v Klinkenburg, 21 Oh Ap 57.**

Norris v Jones holds that there is no presumption of negligence as against either party to an accident except such as arise upon the facts proved and that it is error for a reviewing court to reverse a judgment for plaintiff upon the ground that a clear presumption of contributory negligence arises from the plaintiff's evidence, that a traveler has the right to presume that the interurban will conform to an ordinance of the city as to speed limits and if he acts in accordance with such presump-

tion in the absence of knowledge to the contrary such action upon the part of the traveler will not of itself constitute an act of negligence. To the same effect is **Hart v Devereux, Receiver, 41 Oh St 585.**

It is insisted, upon the part of the appellee, that there was negligence upon the part of the street car company in operating its single track on the east side of the street so that its south going cars must run in the flow of traffic going northward. We do not see that this is negligence as the city authorities permitted the single track to be so located and operated. It is quite true that if a south going car was in the flow of traffic of north going automobiles that would present a condition which would require the motorman to operate the same with such care as not to be guilty of negligence under the existing circumstances. There are also ordinances involved to the effect that vehicular traffic must yield to the operation of street cars. These ordinances are appropriate and should be considered in connection with the conditions existing at the time of the accident.

## THE LAW

Other legal principles which are pertinent to the issues and the evidence in this case may be briefly noted as follows, in addition to those cases already cited.

### NEGLIGENCE

"Where both plaintiff and defendant are negligent and the negligence of both directly contributed to produce the injury, the plaintiff has no right to recover." **Drown v Northern Ohio Traction Company, 76 Oh St 234** and cases cited.

### LAST CHANCE

The doctrine of last chance does not apply where the plaintiff has been negligent and his negligence continues and concurrently with the negligence of the defendant directly contributes to produce the injury; it applies only where there is negligence of the de-

fendant subsequent to and not contemporaneous with the negligence by the plaintiff, so that the negligence of the defendant is clearly the proximate cause of the injury and that of the plaintiff the remote cause, **Drown v Northern Ohio Traction Company, 76 Oh St 234,** and cases cited.

The fact that a driver may have been originally negligent will not, as a matter of law, defeat his right to recover if the motorman had not used diligence after discovering him. **West v Gillett, 95 Oh St 305.**

In determining whether the theory of last chance is presented in action for injuries, broad construction should be given allegations of petition and evidence. Syllabii 3, 4 and 5, **Cleveland R. R. Co. v Duralia, 30 Oh Ap 389.**

Where a motorman operating a car on a public street discovers the peril of one driving a smaller vehicle, it is the motorman's duty to use ordinary diligence to stop or check his car in order to avoid a collision. **Traction Co. v Brandon, 87 Oh St 187,** third syllabus; **Ross v Hocking Valley R. R., 40 Oh Ap 447; Pa. Co. v Hart, 101 Oh St 196; Cohen v Smith, 26 Oh Ap 32.**

### ASSURED CLEAR DISTANCE AHEAD

Under the language of §12603 GC, applicable to assured clear distance ahead, the question of proximate cause and negligence on the part of the driver must, under proper circumstances, be submitted to the jury. Inasmuch as the court refused certain requested charges, later adverted to, involving the duty of the driver in reference to assured clear distance ahead, we call attention to **Hangen v Hadfield, 135 Oh St 281.** While this case, affirming a decision of this Court from Darke County, enumerates certain exceptions which may excuse the driver and thus avoid the legal imputation of negligence per se, yet Weygandt, C. J., in delivering the opinion of the Court referred to, with approval, those cases which hold that the failure to observe these provisions of the statute is negligence per se, which would prevent a recovery.

The first case is that of **Skinner v**

Penn. R. R., 127 Oh St 69, wherein it is held that the language of the section referring to assured clear distance ahead is a specific requirement of law a violation of which constitutes negligence per se. To the same effect are Grumley, Admr. v Cowman, 129 Oh St 36; Kosmos v Retail Credit Men's Company, 131 Oh St 471; Higby v Linderman, 131 Oh St 479.

In all these cases recovery is denied because the facts showed that the provisions of the statute were being violated, and that such violation was the proximate cause of the injury.

Another group of cases that we feel may be applicable to this case are Hamden Lodge, 127 Oh St 469; Baking Company v Middleton, 118 Oh St 106; Theatre v Lautermilch, 118 Oh St 167 and Bevan v R. R. 132 Oh St 245. The principle established by these cases is found in the third and fourth syllabii of the Hamden case to the effect that on motion to direct a verdict, the party against whom it is made is entitled to have the evidence construed most strongly in his favor, but if, after doing this, reasonable minds can come to but one conclusion and that adverse to such party, the Judge should direct a verdict, but where reasonable minds may reach different conclusions the question of fact is for the jury. The test is not whether the trial judge would set aside a verdict on the weight of the evidence.

### THE EVIDENCE

With these statements of primary principle, we turn to an examination of the evidence in this case, both that testified to orally and that presented by exhibits.

Examining the plat submitted, we discover that North Main Street is a straight street presumably giving full view to those using it. No hills or depressions are in evidence. The single railway track, while not in the exact center of the street, has its west rail only 3.06 feet east of the center line of the street. This rail is 23.83 feet from the west curb. The entire width of the street at the point where the accident occurred is about 41 feet. The width of the track is 4.71 feet. The space between the east rail and the east curb line is 12.7 feet, ample room for the passage of an automobile. There is no evidence that there was any car parked along the curb line so as to prevent the car of the decedent having almost 13 feet east of the car line to pass between it and the curb and making a generous allowance of 2 feet for overhang of the car, there would still be 11 feet for free passage, to the east of a south going street car, by a north going automobile.

The evidence disclosed that the rails of the car line were about one inch above the brick between the rails. The photographs which are attached to the bill of exceptions disclose that the impact between the street car and the automobile was of considerable violence. Not only was the front glass of the street car shattered but also that in the front side door. Whether the side door glass was shattered by direct contact with the automobile or by some jar or jolt is not disclosed. It is difficult to understand how the glass in the right hand front door (right of the motorman) was shattered, either by severe jolt or by the impact of the automobile and it may be that this damage was done by the violent movement of the door itself on its hinges, due to the sudden stoppage of the car. The photographs further reveal that the paving on the street extended from curb to curb except where it is testified some curb was omitted. The paving is in reasonably good repair and could not cause any automobile to go out of control. There is on the inside of each rail a slight depression in the paving below the rail surface such as is always present for the accommodation of the flanges of the wheels of the street car.

There are a number of witnesses, only four of whom remotely testified to the cause of the accident. The first of these was a young man riding behind the street car, going in the same direction and keeping pace with its progress. He testifies that the car was proceeding at about 25 miles per hour southward toward the city;

that due to the accumulation of ice on the trolley wire there were occasional flashes of blue sparks which readily disclosed the presence of the car. He also testified that the car was lighted and that its forward progress was suddenly checked. He did not see the automobile going northward, but after the collision arrived on the scene in time to make an examination which enabled him to give the description of the condition of the street car and of the automobile. He stated that there was no sand on the rails.

Another witness was a boy, then 14 years of age, and 17 when he testified, who states that he was on Main Street going toward its intersection with Mahlon Road (Marked on the plat as Maylan Rd) which was near the point of collision. He testifies that he saw the impact; that the street car had practically stopped but the automobile was approaching at a rapid rate giving its speed as 35 miles an hour. He testifies that the automobile, after the impact, bounded back; that they were about 20 feet apart when he first saw them. He describes the crash and states that the driver of the automobile did not try to get out of the tracks. His testimony may possibly be weakened by cross-examination.

One witness, the sole passenger on the car, testified that the car was proceeding southward at about 25 miles per hour; that the bell was ringing intermittently and then violently after which the air brakes were applied and the car came to a near stop sliding along the rails at a speed of not over ten or fifteen miles, "barely moving". He testifies that he saw sand on the track, contrary to the statement of the witness who was following the car. The passenger did not see the oncoming automobile but describes the impact.

George McKinley was the motorman, who testified that his car was proceeding southward at about 20 miles an hour, "maybe a little more, maybe a little less", and that a half square away, somewhat south of the intersection of Mahlon Road he discovered the automobile proceeding northward astride

the west rail of the track. He rang his bell, but thought that the driver intended to turn out to go on to Mahlon Road. When he did not do so, he put the emergency air brake which automatically caused sand to be applied to the rails. He states that the automobile approached at 50 miles an hour, at least, and did not turn either way, just kept straight ahead astride the west rail without slackening his speed. He describes the damage to the car and other indicents relating to the collision. He states that the car was lighted, both inside and with proper headlights, but that a curtain drawn back of his stand would exclude the view of the inside lighting.

All witnesses testify that it was a misty, rainy evening and one testifies that the visibility was good and there is also some testimony to the effect that there was ice on the trolley wire and street, but none upon the rail.

Without further detailing the evidence, but giving to it the construction most favorable to the decedent, we can not escape the conclusion, substantially to the effect, that the defendant's car, well lighted and under control of the motorman who gave proper signals, was proceeding southward on a track whose west rail was less than four feet from the center line of the street and whose east rail was at such a distance from the east curb as to allow a passageway to the east of the street car at least eleven feet wide, after allowing for two feet overhang of the car; that the motorman discovered the approaching automobile and gave a special signal by ringing the bell and when he discovered that the automobile still remained astride the west rail, the air and sand were applied and the street car brought almost to a stop; that the automobile being driven northward was going at a high rate of speed; that it did not deviate from its course on the track nor in any way slacken its speed; that the collision was violent so as to cause great damage to the street car and practically wrecked the automobile. There is no evidence that the part of the street occupied by the track was

in any way in disrepair so as to prevent the proper operation of the automobile. There is no evidence that would invite the application of the doctrine of the "last clear chance" or avoid the holding in **Drown v Traction Co., 76 Oh St 235,** to the effect that the doctrine does not apply where the plaintiff has been negligent and his negligence continues and concurrently with the negligence of the defendant directly contributes to produce the injury. There is no occasion to shield the decedent's action under the rule of **presumption** of lack of negligence. There is enough evidence to lead to the conclusion, not only that he was negligent, but that his negligence was the proximate cause of the accident.

Adverting for a moment to the charge of the Court, the defendant requested a special charge, No. 6, in reference to the operating of the automobile with proper lights and that if the decedent failed to have the automobile equipped with such lights, he was guilty of negligence. The court refused this charge and we think properly so for the reason that there was no evidence introduced to the effect that the automobile was not equipped with proper lights and the jury would not be justified in assuming that there was a lack of proper lighting simply because there was no evidence one way or the other or from the fact that the collision occurred.

Special charge No. 7 gives us more concern and was to the effect that the decedent was under the duty to operate his automobile at a rate of speed so that he could bring it to a stop within the assured clear distance ahead, the charge being that if the jury found that he failed to so operate his automobile and if such failure proximately contributed to his injuries, that he could not recover. This instruction was likewise refused, on what theory we have not been advised.

The action of the plaintiff, as testified to by several witnesses, certainly brings him within the rules laid down in the several cases above cited touching the duty of the operator of the car in reference to assured clear distance ahead. There was every reason why this charge was applicable to the circumstances delineated by the evidence and we are of the opinion that the failure of the court to give the charge, as requested before the general charge, was prejudicial error necessitating a reversal of the judgment below and the granting of a new trial, unless such a procedure is not necessary by virtue of the motions for directed verdict which the Court refused as disclosed by page 43 of the record and which was repeated after all the evidence had been submitted and again refused. We now consider this motion on whether or not there was error in refusing to sustain it. Without again rehearsing the evidence in this case, it is clear to us, regarding the evidence of all the witnesses in the most favorable light to the plaintiff, that the proof of the essential facts and the reasonable inferences deducible therefrom are such that fair minded men should reasonably arrive at but one conclusion, to the effect, that the defendant was not negligent or if it was, that the negligence of the plaintiff contributed to the injury he suffered. Being of this opinion and entering the judgment which the court below should have entered, it is ordered that the judgment of the court be reversed and final judgment be entered for defendant.

HORNBECK, PJ. & BARNES, J, concur.